ANTHONY G. HASTINGS, JOSHUA H. IRONS AND BENJAMIN
D. BURTON,

*vs.*

JEHU CLENDANIEL AND SAMUEL NEALL, trading as CLEN-
DANIEL & NEALL, AND RICHARD F. HASTINGS.

*Sussex, March T.* 1853

A bond executed in *blank* by H. and sureties. to enable him to raise $300
by loan from B. was filled up and delivered, without their knowledge,
to C. & N. for $354 48, in payment of a debt    *Held*, fraudulent and
void as to the sureties.

A bond executed in *blank*, for a specific purpose, cannot be otherwise filled
up, without authority of the obligors.

Such authority must be proved affirmatively, to sustain the bond.

BILL FOR RELIEF OF SURETIES IN A BOND, FOR FRAUD.—
The bill alleged that Richard F. Hastings, being desirous
to borrow from James Bishop $500, on five years' credit,
applied to the complainants to become his sureties; that
with a view to such loan, and to no other object, they signed
and delivered to him a printed judgment bond in blank,
confiding in him, that, upon obtaining the money, he would
fill up correctly, according to their understanding, the
blanks for the name of the obligee, the amount, date and
time of payment.   The bill alleged that he failed to get
the money from Bishop, and then applied to the defendants,
Clendaniel & Neall, who declined to advance any money
on the bond, but proposed to accept it in payment of an
antecedent debt due them from Hastings and a former part-
ner, Dunning, of $354.48; that Hastings consented, and
filling up the bond for $354.48, delivered it to Clendaniel

& Neall—the whole transaction being without the knowledge of the complainants. Hastings has become insolvent and Clendaniel & Neall are proceeding, by judgment and execution, to collect the money from the complainants. The bill charged that Clendaniel & Neall had knowledge of the facts, and that the bond was fraudulently filled up and delivered. *Prayer* for an injunction.

The answer of R. F. Hastings admitted the facts, as alleged in the bill. Clendaniel & Neall, by their answer, denied all knowledge of the circumstances attending the signing of the bond, and alleged that Hastings brought it to them, signed in blank, representing that he was authorized to fill it up for any amount, not exceeding $800, payable to any person, in order to raise money to sustain his credit; that he could use it in payment of debts, but desired to raise some cash; and he proposed to these defendants to fill it up for $500, and give it to them in payment of a debt of $354.48, due from him on his own account and as one of the firm of Hastings & Dunning, if these defendants would advance him the difference, $145.52. They refused to advance any money on the bond, but agreed to take it for their debts on the faith of Hastings' representations. It was filled up and delivered accordingly.

Issues were joined and depositions taken. The material facts, in proof, are set forth in the opinion of the Chancellor.

The cause came before the Chancellor, at the March Term, 1853, for a hearing upon the bill, answer, exhibits and depositions.

*Layton* and *Saulsbury*, for the complainants.

*E. D. Cullen*, for the defendants.

JOHNS, JR., CHANCELLOR.—In this case the complainants

signed and sealed, as sureties, a printed form of a single bill, with warrant of attorney to confess judgment, without filling up the blanks, either as to obligee, sum to be paid, time of payment or date, and delivered the same to Richard F. Hastings, to borrow a sum of money from James Bishop, of Sussex County. The application having been made by Richard F. Hastings to Bishop, and he not having any money to lend, the object contemplated by the verbal agreement of the parties failed, and the blanks were not filled up. Hastings retained the printed form, with the blanks not filled up, and in that condition took the paper to Philadelphia, and there offered it to Nathaniel Hickman, informing him of the purpose for which it had been given : and stated his authority to fill up the blanks, agreeing to fill them up in favor of Hickman, provided he would advance him a sum beyond the amount of his indebtedness. This Hickman declined, and stated that he could not take the security offered, inasmuch as the blanks had not been filled up at the time when it was signed and sealed by the parties. Richard F. Hastings, being also indebted, on his individual account and as a partner of Dunning, to Clendaniel & Neall, afterward made a similar offer to them, and they also refused to loan or advance any money on the security of the instrument; but they agreed to take the same in discharge of the amount due them from Hastings and the firm of Hastings & Dunning ; and they admit they were informed that Hastings expected to have borrowed money from Bishop, but was disappointed, and that he had the same instrument in blank as to the date, obligee, sum and time of payment. Before the blanks were filled the defendant, Clendaniel, admits that he inquired particularly of Hastings as to his authority to fill the blanks, and was satisfied by his verbal assurance; and that, confiding in such verbal declaration that he was authorized, he thereupon, on the blanks being filled up by Hastings, accepted from him the instrument, and now holds the par-

ties signing it as sureties for such a purpose, responsible to the firm for debts antecedently created, and for which they never consented to become sureties, and for an amount larger than they had agreed to become liable. It is conceded that by the transaction the firm of Clendaniel & Neall obtained from the debtor, Richard F. Hastings, a higher security, legally binding him; and, therefore, they were not prejudiced. But the complainants, under the circumstances of the case, consider they are entitled to relief, as the blank instrument was in that condition which apprized the party accepting it of its invalidity against them as sureties. It is, therefore, only necessary that I should consider whether the complainants were liable as sureties. It is apparent no money was advanced or loan obtained on their credit, but, on the contrary, the defendant, Clendaniel, expressly declares in his answer that he refused to advance one cent. He knew that the paper had been signed in blank, to obtain a loan, while refusing to make such loan.

After full consideration of this case, I can discover no analogy to the decisions of cases referred to under the rule which protects purchasers without notice and for a valuable consideration; nor does it appear that the parties complainants, by signing the blank printed form, intended to commit a fraud. They admit the signatures were made by them, as sureties, to enable Hastings to obtain the loan of money from Bishop; and this they had a right to do; and from the nature of the blanks, and the signature being under seal, it was not incumbent on them to give notice in order to protect third persons from such a paper, since it was not negotiable. There was enough appearing on the face of it, independently of its want of negotiability, to guard against deception and induce any person, to whom application might be made, to inquire into and be satisfied as to the legality and authority of the party offering it as a security either to fill up the blanks

Opinion.

or to render it valid as against the parties who had signed their names under seal, leaving the blanks as to sum, date and obligee.  It is evident, from the deposition of Hickman, that he so regarded the paper, and declined to loan any money on it.  And the same appears to have been the opinion of Clendaniel, since he refused to take it as a security for any advance or loan of money, as in his answer he admits.  It is apparent that Clendaniel was fully aware the holder of the printed form in blank, notwithstanding its being signed and sealed, could not fill up the blanks nor render it available against the complainants, unless authorized so to do ; he, therefore, questioned Hastings as to his authority.  This clearly shows, from his own admission, that he was put on his guard ; and, if he waived his right to the exhibition of the requisite and legal authority and chose to confide in the verbal assurances of Hastings, he, with his eyes open, assumed the risk, and should suffer the consequences of his own imprudence and of the fraudulent conduct of Hastings.

In the case of *Baring vs. Shippen*, 2 *Binn. Rep.*, 154, Tilghman,C. J., remarks : " who can say that the answer of Cutting is not material to prove fraud ?  It tends to prove that a bond which was given by Mrs. Shippen to Cutting, for the sole purpose of raising money for her use, was applied by him to the purpose, not of raising money at all but of paying a debt of his own.  If Mr. Baring had applied to Mrs. Shippen before he took the assignment, (which in prudence he ought to have done) he would have found at once that Cutting was acting a fraudulent part, and the mischief would have been prevented : not having done so, he took the assignment at his peril, and has no right to complain of the defence set up against him."

In the same case Yates, J., says : " the general matter contained in the answer or depositions of John Brown Cutting, (the assignor) might well be given in evidence.

They tend to avoid the bond by showing it was made use of for a very different purpose, from that for which the deed was executed by the defendant. It is clearly settled that an obligation, in the hands of an assignee, is subject to all the equity which could have prevailed against the original obligee." If then a bond executed by A. to B., for the purpose of raising money on it by B., as the agent of A., being assigned by B., in payment of the debt of B., cannot be enforced against A., by the assignee, because applied to a different purpose from what was intended by the obligor, it would appear conclusively to follow, that a printed form of a single bill, signed and sealed by persons as sureties, and left blank as to obligee, sum and date, for the purpose of enabling the principal to borrow money from a particular person, when applied in payment of a pre-existing debt due to a different person, cannot by such obligee be enforced against the sureties. It would be the duty of the person to whom such an imperfect instrument was offered to inform himself before accepting it. But when, by the answer of the obligee and the answer and deposition of the principal, it is conceded and proved that the obligee was aware of the purpose for which the blank instrument was originally signed and sealed in blank, and had refused to advance one cent on the credit thereof, the subsequent acceptance thereof for a different purpose, and the filling of the blanks for such purpose, and for larger amounts, cannot avail the party thus acting, as against the complainants. They had agreed to become sureties for a very different object and amount, and never contemplated becoming sureties for any of the existing debts of Hastings, nor for the amount or sum inserted. He, by executing and delivering the single bill to the firm of Clendaniel & Neall, bound himself and no one else. Hence, I consider, under the circumstances of this case, that the transaction as against the sureties was fraudulent, and that they are entitled to relief; and, therefore, I must decree that the

defendants, Clendaniel & Neall, be perpetually enjoined from any further proceedings at law to collect this debt of Hastings from the complainants, or either of them, by virtue of the said single bill, or the judgments entered thereon against the said complainant, or the execution process issued upon said judgments; and that the defendants pay costs.

Decree accordingly.

Decree affirmed by the Court of Errors and Appeals, at the June Term, 1853. 5 *Harring. Rep.* 408.